UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

LISA BIPPEN and DAN BIPPEN, an
individual,

      Plaintiffs,

v.                                   Case No.:   2:19-cv-577-FtM-60MRM

331 5TH AVENUE, INC. D/B/A AREA,
HOME & DESIGN, JOEL HARTMANS
and MAREK GRACZ,

      Defendants.

_____/

## REPORT AND RECOMMENDATION

Before the Court is Plaintiffs' Motion for Default Judgment.  (Doc. 20).  Plaintiffs Lisa

and Dan Bippen move for an entry of default judgment against Defendants 331 5th Avenue, Inc.

d/b/a Area, Home & Design ("AHD"), Marek Gracz, and Joel Hartmans.  (*Id*. at 1).  For the

reasons set forth herein, the Undersigned recommends that Plaintiffs' Motion (Doc. 20) be

**GRANTED IN PART** and **DENIED IN PART**.

## PROCEDURAL BACKGROUND

Plaintiffs filed their Complaint on August 16, 2019, and Defendants failed to respond or

otherwise defend the action.  (*See* Doc. 1).  Thereafter, Plaintiffs moved for an Entry of Default

by the Clerk (Doc. 17), and the Court granted the default as to all three Defendants (Doc. 18).

The Court also directed the Clerk of Court to mail copies of the order granting clerk's defaults to

each Defendant.  However, the Court's file reflects that the mailing was returned as

"Undeliverable – Address Unknown" for Defendant Hartmans.  Nevertheless, no Defendant

made an appearance and Plaintiffs filed this Motion.  Therefore, the matter is ripe for review.

## FACTUAL BACKGROUND

The instant dispute arose when Plaintiffs visited AHD, seeking help for a remodeling project, and met Defendant Hartmans who introduced himself as co-owner of AHD and described AHD as a "full service design and renovation company." (Doc. 1 at 2). After Plaintiffs' visit, AHD presented Plaintiffs with a proposal for their project and the parties—with AHD acting through Defendant Hartmans—executed the proposal agreement. (*Id*.). On January 2, 2019, Plaintiffs paid AHD a $12,000 deposit that AHD deposited into its corporate checking account. (*Id*.).

Approximately one month later, AHD presented Plaintiffs with a formal agreement and Plaintiffs paid AHD an additional $106,120 deposit. (Doc. 1 at 3). AHD deposited this check into its corporate checking account on February 11, 2019. (*Id*.). On May 9, 2019, AHD amended the agreement and requested Plaintiffs pay a third deposit of $67,560 and Plaintiffs agreed. (*Id*.). AHD placed this deposit into its corporate checking on May 9, 2019. (*Id*.). Plaintiffs attach copies of all three agreements as Exhibits 1, 2, and 3 to the Complaint. (Docs. 1-1, 1-2, 1-3).

Some time after the third deposit, and with AHD performing only a minimal amount of preliminary work, Sam Kellogg approached Plaintiffs and introduced himself as an associate of AHD's other co-owner, Defendant Gracz. (Doc. 1 at 3). Mr. Kellogg informed Plaintiffs that Defendants Hartmans and Gracz had an ongoing dispute regarding AHD's finances and that AHD's checking account had a balance of only $300. (*Id*.).

Concerned that this dispute and AHD's financial state would impact the parties' agreement, Plaintiffs contacted Defendant Hartmans as to the status of the renovation. (Doc. 1 at 3). Defendant Hartmans informed Plaintiffs that Defendant Gracz was a "scam" and had

siphoned money from AHD for his own personal use.  (Doc. 1 at 3).  When Plaintiffs informed

Mr. Kellogg of this accusation, Mr. Kellogg told Plaintiffs that he had spoken with Defendant

Gracz who accused Defendant Hartmans of being the "scam" and also taking money from AHD

for Defendant Hartmans' personal use.  (*Id*. at 4).

Thereafter, Defendant Hartmans sent numerous emails to Plaintiffs explaining that:  (a)

Defendant Gracz had encountered financial problems and taken $30,000 from AHD's corporate

checking account, paying an additional $25,000 to Mr. Kellogg from the account; (b) Mr.

Kellogg was withholding $25,000 of customer deposits from AHD's account; (c) Defendant

Hartmans demanded Defendant Gracz return the money but that Defendant Gracz refused,

insisting that he was "broke;" and (f) Defendant Hartmans had "decided to give Gracz [sole

ownership of AHD] and Gracz has [Plaintiffs'] money."  (Doc. 1 at 4).[1]

Defendant Hartmans also provided Plaintiffs with several of AHD's monthly statements,

revealing that Defendant Gracz had in fact transferred $30,000 to himself after Plaintiffs' second

and third deposits and that Defendant Hartmans had also transferred $69,694.67 to himself.

(Doc. 1 at 5).  Despite Plaintiffs paying $185,680 in deposits for the project, these statements

revealed that AHD had a balance of only $12,036.49 on May 31, 2019.[2]

Following these disclosures, Defendant Hartmans filed Articles of Dissolution for AHD

with Florida's Secretary of State and represented in the Articles that "no debt of the corporation

remains unpaid, despite the fact that AHD was indebted to [Plaintiffs] for the $185,680 that they

---

[1] From the Complaint, it is unclear if Mr. Kellogg was withholding $25,000 of Plaintiffs' deposit, or of other customer deposits.

[2] The Complaint implies that Defendants Hartmans and Gracz continued making transfers to themselves because while AHD's balance as of May 31 was $12,036.49, Mr. Kellogg told Plaintiffs AHD had only $300 on June 15.  (*See* Doc. 1 at 3, 5).

had paid in deposits," as the Complaint alleges. (Doc. 1 at 5). Plaintiffs, after the purported dissolution of AHD, approached Defendant Gracz to inquire about the status of their project and whether AHD would either complete the work or refund Plaintiffs' deposits. (*Id.*). Defendant Gracz indicated that AHD had no money to complete the project and that he had no intention of refunding Plaintiffs' deposits. (*Id.*). The Complaint represents that after this meeting, "no additional work was performed for the Project and no amounts were repaid to [Plaintiffs]." (*Id.*).

The Undersigned now addresses the legal standard for default judgment.

## LEGAL STANDARD

The Court may enter a default judgment against a properly served defendant who fails to defend or otherwise appear pursuant to Federal Rule of Civil Procedure 55(b)(2). *Cohan v. Sparkle Two, LLC*, 309 F.R.D. 665, 666 (M.D. Fla. 2015); *see also Directv, Inc. v. Griffin*, 290 F. Supp. 2d 1340, 1343 (M.D. Fla. 2003). The effect of the entry of a default is that all factual allegations in the complaint are taken as true, save for the amount of unspecified damages. *Cohan*, 309 F.R.D. at 666 (citing *Buchanan v. Bowman*, 820 F.2d 359, 361 (11th Cir. 1987)). "[I]f liability is well-pled in the complaint, it is established by the entry of a default." *Id.*

Default judgment, however, may only be entered "if the factual allegations of the complaint, which are assumed to be true, provide a sufficient legal basis for entry of a default judgment." *Id.* (citing *Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)).[3] While the Court "must accept well-pled facts as true, the court is not required to accept a plaintiff's legal conclusions." *De Lotta v. Dezenzo's Italian Rest., Inc.*, No. 6:08-cv-2033-ORL-22-KRS, 2009 WL 4349806, at *2 (M.D. Fla. Nov. 24, 2009) (citing *Ashcroft v.*

---

[3] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), the Eleventh Circuit Court of Appeals adopted as binding precedent all the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

*Iqbal*, 556 U.S. 662, 678 (2009)).  Defendants are not held to admit facts that are not well-pled or to admit conclusions of law.  *Nishimatsu*, 515 F.2d at 1206.

To be well-pled, a complaint does not need detailed factual allegations, but a complaint must provide the grounds for entitlement to relief.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Iqbal*, 556 U.S. 678.  This standard—derived from motions to dismiss pursuant to Fed. R. Civ. P. 12(b)(6)—is "equally applicable to a motion for default judgment."  *Cohan*, 309 F.R.D. at 667.  Thus, a complaint requires more than labels and conclusions, and "a formulaic recitation of the elements of a cause of action will not do."  *Iqbal*, 556 U.S. at 678.  A complaint will not suffice if "it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  *Id.* "The well-pled allegations must nudge the claim 'across the line from conceivable to plausible.'" *De Lotta*, 2009 WL 4349806, at *2 (quoting *Twombly*, 550 U.S. at 570).

Therefore, the appropriate focus is whether Plaintiffs' Complaint adequately provides the grounds for relief of each Count.

## DISCUSSION

The Complaint contains four separate Counts that the Undersigned addresses in turn:  (1) Breach of Contract; (2) Fraud; (3) Statutory Fraudulent Transfer; and (4) Alter Ego Liability. (Doc. 1 at 5, 6, 7, 11).

## I.    Breach of Contract

Plaintiffs first allege AHD breached an enforceable agreement.  (Doc. 1 at 5).  A federal court sitting in diversity, such as this Court, applies the substantive law of the forum state; in this case, Florida.  *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938).  To establish a prima facie claim for breach of Contract under Florida law, Plaintiffs must show that:  (1) there was a valid contract; (2) a material breach of the contract; and (3) damages.  *Beck v. Lazard Freres & Co.,*

*LLC*, 175 F.3d 913, 914 (11th Cir. 1999) (citing *Abruzzo v. Haller*, 603 So. 2d 1338, 1340 (Fla. 1st DCA 1992)).

Here, the Complaint sets forth facts establishing that AHD and Plaintiffs entered into a valid contract or contracts.  "A contract is made under Florida law when the three elements of contract formation are present:  offer, acceptance, and consideration."  *Pezold Air Charters v. Phoenix Corp.*, 192 F.R.D. 721, 725 (M.D. Fla. May 4, 2000) (citing *Air Prods. & Chems., Inc. v. The Louisiana Land & Exploration Co.*, 806 F.2d 1524, 1529 (11th Cir. 1986)).  AHD presented Plaintiffs with a proposal and Plaintiffs accepted AHD's proposal when they tendered their deposits.  To the extent that any modification or later agreement constituted a new agreement, the Undersigned finds that Plaintiffs also accepted those when they paid additional deposits.  Thus, the Complaint demonstrates that the parties executed a valid contract or contracts.

Next, AHD materially breached that contract.  A material breach occurs "when an injured party has sustained a substantial injury due to the breach."  *Bland v. Freightliner LLC*, 206 F. Supp. 2d 1202, 1210 (M.D. Fla. Apr. 15, 2002).  In determining whether a breach is material, courts examine certain criteria such as the extent the injured party will be deprived of the benefit they reasonably expected, the availability of adequate compensation for the injured party, and the likelihood that the breaching party will cure.  *Id.*  (citing *Malladi v. Brown*, 987 F. Supp. 893, 905 (M.D. Ala. 1997) (discussing Section 241, Restatement (Second) of Contracts (1979))).  Applying any of these considerations, the Complaint shows that AHD materially breached the contract or contracts.

For example, Plaintiffs repeatedly sought reassurance that AHD would perform the agreement or refund Plaintiffs' deposits after discovering AHD's troubling financial state.

6

Instead of addressing these concerns, AHD—through its co-owners—refuted Plaintiffs' demands and neither performed the work nor refunded Plaintiffs.  In fact, Defendant Hartmans dissolved AHD, making AHD's performance impossible while expressly representing that AHD was not indebted to Plaintiffs.  These facts support that AHD materially breached its agreement(s) with Plaintiffs.

For the above reasons, the Complaint demonstrates that Plaintiffs did not receive the "benefit of their bargain," and as a result, the Undersigned recommends entering default judgment against AHD for breach of contract.

## II.    Fraud

Count II alleges fraud against Defendant Hartmans.  (Doc. 1 at 6).  Under Florida law, "[t]he essential elements of a fraud claim are:  (1) a false statement concerning a specific material fact; (2) the maker's knowledge that the representation is false; (3) an intention that the representation induces another's reliance; and (4) consequent injury by the other party acting in reliance on the interpretation."  *Serefex Corp. v. Hickman Holdings, LP*, 695 F. Supp. 2d 1331, 1342 (M.D. Fla. Feb. 23, 2010) (citing *Ward v. Atlantic Sec. Bank*, 777 So. 2d 1144, 1146 (Fla. 3d DCA 2001)).

Here, Plaintiffs allege Defendant Hartmans "made numerous false representations to [Plaintiffs] to induce them to enter into the [a]greement."  (Doc. 1 at 6).  These statements included:

> (a) [t]hat AHD could perform the work for the project as set forth in the Agreement, even though [Defendant Hartmans] knew that AHD did not have sufficient funds due to the fact that AHD's corporate checking account had a balance of $0.72 when [Plaintiffs] paid their first deposit; [and]

> (b) [t]hat [Plaintiffs'] deposits would be applied toward the work for the Project, even though Hartmans intended to fraudulently transfer

portions of [Plaintiffs'] deposits from AHD's corporate checking account to himself and/or others.

(Doc. 1 at 6).

Defendant Hartmans made these statements, Plaintiffs allege, with the intent that Plaintiffs rely on AHD's promised ability to complete the project despite Hartmans knowing AHD did not have that ability—and would not use Plaintiffs' deposit—to complete the project. (Doc. 1 at 7). In that respect, Defendant Hartmans made these statements as "a material part of his pitch to convince [Plaintiffs] to enter into the Agreement with him and AHD" as the Complaint rightfully asserts. (*Id*.).

Perhaps the best indicia that Defendant Hartmans knew his statements regarding AHD's ability to perform were false, made primarily to induce Plaintiffs to keep paying AHD, are the agreements themselves. Around early February 2019, at the behest of Defendant Hartmans and AHD, Plaintiffs paid their second deposit of $106,120. (Doc. 1 at 3). The agreement explained this deposit was necessary "to move forward with contract [sic]" and "[the deposit] ensures that [Plaintiffs] have secured [AHD's] time and resources" to begin and complete the project "in a timely manner." (Doc. 1-2 at 2). The parties executed this agreement on February 8, 2019. (*Id*. at 3). Elsewhere in the Complaint, however, Plaintiffs allege that by February 5—three days before the new agreement and subsequent payment—Defendant Hartmans had transferred $19,084.67 from AHD to himself. (Doc. 1 at 8-9).

These facts, as set forth in Plaintiffs' Complaint, strongly support an inference that Defendant Hartmans had the intent to defraud Plaintiffs when the parties entered into their first agreement and later agreements only solidify that inference. Additionally, Defendant Hartmans knew that his representation of AHD needing more money to begin or complete the project was false because when he made that representation, he had skimmed much of Plaintiffs' deposit

away from AHD.  To the extent that Defendant Hartmans kept soliciting additional monies under the guise that this money would be used for the project, his representations were false and fraudulent.  Inasmuch, the Undersigned finds that Plaintiffs have met their burden as to Count II and recommends the Court enter default judgment as to Defendant Hartmans for fraud.

### III.    Statutory Fraudulent Transfer

Plaintiffs next allege that all three Defendants violated Fla. Stat. § 726.105, otherwise known as Florida's Uniform Fraudulent Transfer Act ("FUFTA").  (Doc. 1 at 7).  "Under [FUFTA] a creditor may avoid, or rescind, a transfer of assets made from a debtor to a transferee if the transfer was fraudulent."  *Sallah v. Worldwide Clearing LLC*, No. 10-62264-Civ, 2012 WL 399209, at * 2 (S.D. Fla. Feb. 7, 2012) (citing Fla. Stat. § 726.108(1)(a)).

A transfer is fraudulent as to a creditor when the debtor made the transfer:  (a) with actual intent to hinder, delay, or defraud any creditor of the debtor; or (b) without receiving a reasonably equivalent value in exchange for the transfer, and the debtor (1) was engaged in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction or (2) intended to incur, believed, or reasonably should have believed that it would incur debts beyond its ability to pay as they became due.  Fla. Stat. § 726.105(1)(a)-(b).

Here, Plaintiffs do not specify if they are pursuing a theory of the actual fraud provision in § 726.105(1)(a) or the constructive fraud provision in § 726.105(1)(b) and the Complaint quotes statutory language from, while comingling facts supporting, both.  (*See* Doc. 1 at 8).  The Eleventh Circuit has explained that a claim of actual fraud under the FUFTA requires:  "[1] a creditor to be defrauded, [2] a debtor intending fraud, [and] [3] a conveyance of property which is applicable by law to the payment of the debt due."  *Wiand v. Lee*, 753 F.3d 1194, 1199-1200

(11th Cir. 2014).  In determining whether an obligor intended to defraud a creditor when making the transfer, "courts look to the statutory 'badges of fraud,' such as whether, for example, the transfer was to an insider, the debtor retained control of the property after the transfer, the transfer was of substantially all of the debtor's assets, or the debtor was insolvent or became insolvent shortly after the transfer was made."  *Id*. at 1200; *see* Fla. Stat. § 726.105(2).

Plaintiffs became AHD's creditors when they paid AHD their three deposits.  In support that AHD actually intended to defraud Plaintiffs, the Complaint details several transactions AHD made from its corporate checking account to Defendants Hartmans and Gracz.  Between the time Plaintiffs paid their first deposit and shortly after paying their third, AHD made no fewer than twenty-seven transfers to or on the behalf of Defendants Hartmans and Gracz—both insiders of AHD as its co-owners—totaling $115,527.67.  (*See* Doc. 1 at 8-11).  AHD continued to solicit deposits from Plaintiffs and transferring portions of these deposits to Defendants Hartmans and Gracz despite the deposits constituting a substantial portion of AHD's corporate checking account as evidence by the $0.72 balance when Plaintiffs and AHD executed the agreement.  Moreover, these transfers led to AHD's insolvency and Defendant Hartmans filed AHD's Articles of Dissolution less than a month after Plaintiffs' third deposit.  These facts strongly support an inference that AHD made the transfers to Defendants Hartmans and Gracz with an actual intent to defraud Plaintiffs.

With respect to the constructive fraud provision of the FUFTA, the Eleventh Circuit has held:

> To establish constructive fraud under Florida law, a plaintiff must show that a transfer was made absent reasonably equivalent value in exchange and that the debtor intended to incur, or believed or reasonably should have believed that he or she would incur, debts beyond his or her ability to pay as they came due.

*United States v. South Capital Constr., Inc.*, 758 F. App'x 676, 679 (11th Cir. Dec. 13, 2018) (internal quotations omitted).

The Complaint alleges facts supporting both of those requirements.  Defendant Hartmans conveyed to Plaintiffs that "each of the transfers was unrelated to the actual business operations of AHD and was instead for the personal benefit of the recipient."  (Doc. 1 at 8).  This demonstrates that AHD did not receive a reasonably equivalent value in exchange for the transfers as they were unrelated to Defendants Hartmans' and Gracz's roles as co-owners of AHD—such as compensation for their positions.  Instead, AHD made the transfers solely for the personal benefit of Defendants Hartmans and Gracz.  Moreover, that facts alleged strongly support the conclusion that AHD intended to incur, or at least reasonably should have believed it would incur debts beyond its ability to pay as they came due.

Again, despite its troubling financial situation at the time it executed the agreement with Plaintiffs, AHD—almost immediately—began transferring Plaintiffs' deposits from its corporate checking account to Defendants Hartmans and Gracz.  Even though it did not perform any substantial portion of the agreement, AHD continued soliciting deposits from Plaintiffs, meanwhile transferring portions of those deposits to Defendant Hartmans and Gracz.  In other words, AHD continued becoming indebted to Plaintiffs while taking actions that ensured it would not be able to repay Plaintiffs.  The Complaint also alleges that AHD indeed was unable to repay its debts, evident from Defendant Gracz's statements that there was no money left for AHD to perform the project or refund Plaintiffs.

Taken as a whole, the Complaint sufficiently sets forth facts demonstrating that all three Defendants violated FUFTA's actual and constructive fraud provisions.  For these reasons, the Undersigned recommends granting default judgment as to Count III for all Defendants.

## IV.     Alter Ego Liability

Count IV of the Complaint asserts alter ego liability against Defendants Hartmans and

Gracz.  (Doc. 1 at 11).  "Piercing the corporate veil" is not an independent cause of action,

*Peacock v. Thomas*, 516 U.S. 349, 354 (1996), but a theory to impose liability on individuals for

the debts and actions of a corporation, *see Dania Jai-Alai Palace, Inc. v. Sykes*, 450 So. 2d 1114

(Fla. 1984).  The same is true under state law in that, "piercing the corporate veil is not an

independent cause of action under Florida law."  *Gumbel v. Scott*, No. 09-60480-CIV-JORDAN,

2010 WL 11505125, at *2 (S.D. Fla. Jan. 6, 2010) (dismissing without prejudice standalone

allegation of piercing the corporate veil) (citing *Turner Murphy Co. v. Specialty Constructors,*

*Inc.*, 659 So 2d 1242, 1245 (Fla. 1st DCA 1995).  Thus, the Undersigned construes Count IV of

Plaintiffs' Complaint as seeking to impose liability on Defendants Hartmans and Gracz for any

judgment entered against corporate Defendant AHD.

Under Eleventh Circuit precedent:

> It is black letter law in Florida that to disregard [the] corporate
> fiction and hold the corporation's owners liable—to "pierce the
> corporate veil"—the plaintiff must prove that:
>
> (1)     the *shareholder* dominated and controlled the corporation to
> such an extent that the corporation's independent existence, was in
> fact non-existent and the *shareholders* were in fact alter egos of the
> corporation;
>
> (2)     the corporate form must have been used fraudulently or for
> an improper purpose; and
>
> (3)     the fraudulent or improper use of the corporate form caused
> injury to the claimant.

*Molinos Valle Del Cibao, C. por A. v. Lama*, 633 F.3d 1330, 1349, (11th Cir. 2011) (emphasis in

original) (citing *Gasparini v. Pordomingo*, 972 So. 2d 1053, 1055 (Fla. 3d DCA 2008)).

Here, the Complaint sufficiently alleges facts satisfying all three elements.  It explains that Defendants Hartmans and Gracz were the co-owners and sole shareholders of AHD and the repeated, fraudulent transfers the two made from AHD's corporate checking account for their own benefit eroded AHD's corporate form to the point it was a mere formality.  (Doc. 1 at 11). To that end, Defendants Hartmans and Gracz were the alter-egos of AHD.  Furthermore, as detailed above, AHD used its corporate form to perpetuate fraud on Plaintiffs.

AHD would solicit deposits from Plaintiffs under the guise that AHD would use the deposits for renovation work.  Rather than using Plaintiffs' deposits for their intended purpose, AHD would transfer significant portions of the deposits to Defendants Hartmans and Gracz.  It would then, again using its corporate form, request Plaintiffs pay additional money for work it never intended to complete.

Lastly, the Complaint demonstrates that AHD's co-owners perpetuated this scheme while intending to benefit from the protection that AHD's corporate form provided them against liability.  Only after Plaintiffs learned of AHD's actions—that it had transferred the bulk of Plaintiffs' deposits to its owners with no intention of performing or repaying Plaintiffs—did Defendant Hartmans dissolve AHD.  To be certain, the Complaint details a problematic comingling of funds, raises serious questions as to the legitimate business purpose of AHD beyond taking Plaintiffs' money for the benefit of Defendants Hartmans and Gracz, and demonstrates a willfulness to subject AHD to ongoing liability for the actions of its owners.

The Undersigned recommends, therefore, that the Court hold Defendants Hartmans and Gracz liable for AHD's actions as the alter-egos of AHD.  *See Morris v. Bischoff*, No. 96-1384-Civ-T-17A, 1997 WL 128114, at *8 (M.D. Fla. Mar. 4, 1997) (finding complaint alleging commingling of funds, using assets of corporation for own personal gain, failing to capitalize

adequately the corporation, and using corporate form to avoid liability sufficient to pierce the corporate veil).

## DAMAGES

Finally, the Undersigned turns to the issue of damages.  Once liability is established, federal courts then address the terms of the judgment.  *Cohan v. Sparkle Two, LLC*, 309 F.R.D. 665, 667 (M.D. Fla. 2015).  "A default judgment must not differ in kind from or exceed in amount, what is demanded in the pleadings."  Fed. R. Civ. P. 54(c).  Moreover, "[i]f unspecified monetary damages are sought, the party moving for default judgment has the burden to prove the unliquidated sums in a hearing on damages or otherwise."  *Cohan*, 390 F.R.D. at 667 (citing Fed. R. Civ. P. 55(b)(1)-(2)).  Under Rule 55(b)(2), "[t]he court may conduct hearings . . . when, to enter or effectuate judgment, it needs to . . . determine the amount of damages."  Fed. R. Civ. P. 55(b)(2)(B).  "The court has 'an obligation to assure that there is a legitimate basis for any damage award it enters, and to assure that damages are not awarded solely as the result of an unrepresented defendant's failure to respond.'"  *Lofrisco v. Gulf Coast Health Care*, No. 8:13-cv-3159-T-36MAP, 2014 WL 4674323, at *1 (M.D. Fla. Sept. 15, 2014) (quoting *Anheuser-Busch, Inc. v. Philpot*, 317 F.3d 1264, 1266 (11th Cir. 2003)).  "Well-pled allegations as to damages, however, are also admitted by a default."  *Giovanno v. Fabec*, 804 F.3d 1361, 1366 (11th Cir. 2015) (citing *SEC v. Smyth*, 420 F.3d 1225, 1232 n.13 (11th Cir. 2005)).

## I.    Sum Certain

Here, the Undersigned finds that a hearing on the issue of damages is unnecessary because although the prayer in the Complaint is inexact as to amount of damages, Plaintiffs' Motion states clearly that Plaintiffs seek damages in an amount certain that is well-grounded in the allegations of the Complaint and other evidentiary materials of record.  For example, as to

Count III, Plaintiffs seek a "principal amount greater than $75,000" plus interest.  (Doc. 1 at 11).

Obviously, this is an uncertain, unspecified estimate.  Plaintiffs, however, clarify in their Motion

that they "request that the Clerk enter the default judgment against the Defendants in the amount

of $185,680.00 because Plaintiffs' claim is for a sum certain."  (Doc. 20 at 2).  Perhaps

recognizing that Plaintiffs' Complaint includes a request for relief different than that sum,

Plaintiffs reiterate in their Motion:  "If the Court finds that the Clerk is not permitted to enter a

default judgment in this instance, Plaintiffs request that the Court enter the default judgment

against all Defendants in the amount of $185,680.00."  (*Id.*).  In other words, Plaintiffs have

clarified in their Motion that the amount of damages they seek is an amount certain of $185,680,

which is the sum of the three deposits they paid to AHD.  (*See id.*).  Thus, it is clear Plaintiffs are

seeking the total of the three deposits they paid AHD and represent they have limited their

recovery to that amount (*i.e.*, $12,000 + $106,120 + $67,560 = a total of $185,680).

"Still, default judgment may not be entered without a hearing on damages unless 'the

amount claimed is [] capable of ascertainment from definite figures contained in the

documentary evidence or in detailed affidavits.'"  *Almeira v. GB House, LLC*, No. 8:14-cv-

00045-T-27AEP, 2014 WL 1366808, at *1 (M.D. Fla. Apr. 7, 2014) (quoting *Dundee Cement

Co. v. Howard Pipe & Concrete Prods., Inc.*, 722 F.2d 1319, 1323 (7th Cir. 1983)).  Stated

differently, for the Court to not hold a hearing, "[Plaintiffs'] damages should be readily provable

by reference to objective documentation" from "sworn, authenticated evidence."  *Id.* (quoting

*Natures Way Marine, LLC v. N. Am. Materials, Inc.*, No. 08-0005-WS-B, 2008 WL 801702, at

*4 (S.D. Ala. Mar. 24, 2008)).

Here, the Court need not hold a hearing because Plaintiffs sufficiently document their

damages claim for $185,680 through Plaintiff Lisa Bippen's Affidavit.  There, Plaintiff Bippen

attests to when she made each payment, that she made those payments because "based on the Agreement, [Plaintiff] understood the money from the payments would be used for the Project," and that "after [Plaintiff] made [those] payments to AHD, the work that AHD was required to perform under the Agreement was never completed."  (Doc. 20-1 at 2).  "Ultimately," Plaintiff Bippen avers, "none of the money that [she] paid to AHD was used to remodel the Property as required by the Agreement."  (*Id*.).  Plaintiffs also attach three executed agreements between themselves and AHD showing that Plaintiffs' deposits total $185,680.  (*See* Doc. 20-1 at 5, 8, 10).  Finally, Plaintiffs attach to their Motion a check from Lisa Bippen to AHD for $12,000 dated January 2, 2019, and two bank statements reflecting a transfer of $106,120 and $67,560 from Plaintiffs to AHD.  (*Id*. at 11-13).  This evidence makes Plaintiffs' requested damages mathematically calculable and mitigates any concern regarding uncertain sums.

Plaintiffs have provided "sworn, authenticated evidence" and their damages are "readily provable by reference to objective documentation."  *Natures Way Marine, LLC*, 2008 WL 801702, at \*4.  The Undersigned finds, therefore, that the Court need not hold a hearing as to damages because "any additional evidence would be truly unnecessary to a fully informed determination of [Plaintiff's requested] damages," *Safari Programs, Inc. v. CollectA Int'l Ltd.*, 686 F. App'x 737, 746 (11th Cir. Apr. 25, 2017), and recommends the Court award Plaintiffs' $185,680, reflecting what Plaintiffs paid AHD in three separate deposits.

## II.    Attorneys' Fees and Costs

In addition to the sum certain of $185,680, Plaintiffs seek attorneys' fees and costs. Litigants, however, "are ordinarily required to bear their own attorney's fees" absent express statutory authority or an enforceable contract.  *Buckhannon Bd. & Care Home v. W. Virginia Dep't of Health & Human Res.*, 532 U.S. 598, 602 (2001); *see also Alyeska Pipeline Serv. Co. v.*

*Wilderness Society*, 421 U.S. 240, 257.  The same is true for claims brought under Florida law. *See Price v. Tyler*, 890 So. 2d 246, 250 (Fla. 2004) ("Under Florida law, each party is responsible for its own attorneys' fees unless a contract or statute provides otherwise.").

Here, Plaintiffs cite no authority entitling them to fees for the Counts alleged.  The FUFTA has also no provision that explicitly provides for an award of attorneys' fees.  *See* Fla. Stat. § 726.101, *et seq*.; *see also Euro RSCG Direct Response, LLC v. Green Bullion Fin. Servs.*, 872 F. Supp. 2d 1353, 1364 (S.D. Fla. 2012) (striking attorney fee demand because FUFTA lacks a fee provision).  And a review of the contracts that Plaintiffs attach to the Complaint shows they lack any language entitling the prevailing party to fees; thus, leaving Plaintiffs without a contractual entitlement to fees.  Lastly, Plaintiffs fail to attach a certified Bill of Costs allowing the Court to calculate accurately what costs Plaintiffs are entitled to under applicable law.

As a result, the Undersigned recommends denying Plaintiffs' request for attorneys' fees and costs.

## CONCLUSION

For the foregoing reasons, the Undersigned **RESPECTFULLY RECOMMENDS** that:

1.     Plaintiffs' Motion for Default Judgment (Doc. 20) be **GRANTED IN PART** and **DENIED IN PART** as set forth below.

       a.     The Court enter default judgment against Defendant 331 5th Avenue, Inc. d/b/a Area, Home & Design for breach of contract under Count I and find that Defendants Hartmans and Gracz were the alter-egos of the corporation and hold the individual Defendants liable for breach of contract under Count I.

   b.  The Court enter default Judgment against Defendant Joel Hartmans for fraud under Count II.

   c.  The Court enter default judgment against Defendants 331 5th Avenue, Inc. d/b/a Area, Home & Design, Marek Gracz, and Joel Hartmans for statutory fraudulent transfer under Florida's Uniform Fraudulent Transfer Act under Count III.

2.  The Court award Plaintiffs Lisa and Dan Bippen damages in the amount of $185,680, with all three Defendants liable for that sum.

3.  To the extent that Plaintiffs seek any greater or different relief than recommended in this Report and Recommendation, such request be **DENIED**.

  **RESPECTFULLY RECOMMENDED** in Chambers in Ft. Myers, Florida on May 7, 2020.

MAC R. MCCOY
UNITED STATES MAGISTRATE JUDGE

**NOTICE TO PARTIES**

  A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1.

Copies furnished to:

Counsel of Record
Unrepresented Parties